IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100017837748285 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC.

Magistrate No. 21-907
[UNDER SEAL]

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Ryan Melder, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in 1601 Willow Road, Menlo Park, California 94025. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Special Agent with the Federal Bureau of Investigation and have been since May 2017. Prior to becoming an FBI Special Agent, Affiant was employed with the FBI as a Staff Operations Specialist in Washington D.C. and as a Surveillance Specialist in New York, New York since December 2012. I am currently assigned to the Pittsburgh Field Office, New Castle Resident Agency, where the FBI is investigating the matters described below, along with members of the Pennsylvania State Police.

3. As part of my duties, I have participated in numerous investigations of the unlawful possession and distribution of controlled substances in violation of Title 21, United States Code, Sections 841 and 846. These investigations have involved the use of confidential sources, pen register, toll analysis, electronic surveillance, and physical surveillance.

4. My experience as a narcotics investigator includes but is not limited to: participating in controlled drug purchases, undercover operations, conducting static and mobile surveillance, interviewing and utilizing witnesses and informants, writing and executing search and arrest warrants, consensual monitoring and recording of both telephonic and non-telephonic communications, applying for court-authorized wire and/or electronic intercepted communications, and analyzing telephone records and pen register data. I have reviewed communications between drug traffickers; in addition, your Affiant has had many conversations with drug traffickers and users as well as with other law enforcement officers about methods and language used by traffickers to smuggle, store, and distribute drugs, collect and launder drug proceeds, and avoid detection by law enforcement officers.

5. As a result of your Affiant's narcotics related training and experience, I am familiar with the methods and language used to distribute narcotics, to launder proceeds, and to operate drug-trafficking conspiracies, and know that, in accordance with Title 21, United States Code, Section 841, it is unlawful for an individual to manufacture, distribute, or possess with intent to distribute or dispense a controlled substance.

6. This Affidavit is submitted in support of a search warrant for the Facebook account, as described in Attachment A, associated with Daniel Dellich (hereinafter referred to as "DELLICH"). The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of federal felony offenses enumerated in Title 18, United States Code, Section 2516; including, violations of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility), and 846 (conspiracy) have been committed by DELLICH. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## FACTS ESTABLISHING PROBABLE CAUSE

8. This investigation is the result of efforts by the Pennsylvania State Police (PSP), and the FBI to investigate and prosecute individuals involved and/or associated with the DELLICH Drug Trafficking Organization (DTO), which is known by law enforcement to engage in drug trafficking in the Western District of Pennsylvania.

9. In November 2020, investigators received information from a Confidential Informant (hereinafter referred to as "CI 1") that DELLICH, was involved in illegal drug trafficking in the Boyers area of Butler County, Pennsylvania. CI 1 related that DELLICH would sell crystal methamphetamine out of a garage located at 150 station road, Forestville, PA, as well as his residence located at 522 Harrisville Road, Boyers, PA 16020 (hereinafter referred to as "DELLICH's Residence"). CI 1 was provided a PA DMV photo with biographical information concealed and identified the photo as DELLICH.

10. In December 2020, CI 1 was utilized to conduct a controlled purchase of crystal methamphetamine from DELLICH. To facilitate the purchase of narcotics CI 1 contacted

DELLICH via Facebook Messenger[1] under the username "Dan Dellich" Facebook User ID# 100017837748285.

11. DELLICH provided CI 1 a time and location to meet via Facebook Messenger. CI 1 was provided pre-recorded funds and went to the location with an undercover officer in the vehicle. Investigators observed CI 1 reach into the open driver side window of DELLICH's white Ford Truck (PA ZPV7813) and observed DELLICH in the driver's seat of the truck. CI 1 then returned to the vehicle with the undercover officer and went to a pre-determined location. CI 1 provided investigators with paper containing suspected crystal methamphetamine. The methamphetamine was entered into evidence and subsequently submitted to the state police crime lab for analysis.

12. In January 2021, investigators again utilized CI 1 to conduct a controlled purchase of crystal methamphetamine from DELLICH at his garage building located across the road from DELLICH's Residence.

13. CI 1 contacted DELLICH via Facebook messenger under the username "Dan Dellich" Facebook User ID# 100017837748285. A screen shot of the Facebook communication between the CI 1 and DELLICH was provided to investigators:

**CI:** You good?

**DELLICH:** Not on Tickets

---

1. Your Affiant is aware that Facebook Messenger is a free messaging application and platform created by Facebook, which enables users to communicate with other users via text messages, voice-to-voice calls as well as video calls.

**CI:** Ice?

**DELLICH:** Yep

**CI:** Think you'd be able to meet me somewhere around 4ish?

**DELLICH:** Probably not. Pretty busy

**CI:** So I'd have to just come to you?

**DELLICH:** Right now its looking that way

**CI:** Lemme see what I can throw together – I'll be in touch

**DELLICH:** Ok


14. DELLICH provided CI 1 a time and location to meet via Facebook Messenger. Investigators provided CI 1 pre-recorded funds and went to the location with an undercover officer in the vehicle. Investigators observed DELLICH and CI 1 walk into his garage building located across the road from DELLICH's Residence. CI 1 returned to the vehicle with the undercover officer less then five minutes later. CI 1 and the undercover officer then went to a predetermined location.

15. CI 1 related that he/she and DELLICH walked inside the smaller and northern most of 3 tan garage/pole buildings located across the road from DELLICH's Residence. DELLICH pulled out a plastic bag with approximately an ounce of crystal methamphetamine and a scale from his pocket. DELLICH then weighed out and provided the crystal methamphetamine to CI 1 in exchange for the pre-recorded confidential funds. CI 1 then walked back to the undercover officer and left.

16. In March 2021, investigators utilized a confidential informant (hereinafter referred to as "CI 2") to conduct a controlled purchase of crystal methamphetamine. CI 2 contacted

DELLICH via Facebook messenger under the username "Dan Dellich" Facebook User ID# 100017837748285.

17. CI 2 and DELLICH discussed a time and location to meet via Facebook Messenger. CI 2 was provided pre-recorded funds and went to the location followed by undercover officers. Investigators observed CI 2 walk into the garage bay door of the smaller and northern most of 3 tan garage/pole buildings, located across from DELLICH's Residence and then back to the vehicle. Shortly after, DELLICH was observed arriving in his white Ford Pickup (PA ZPV7813) and park. DELLICH then walked with CI 2 into the front door of DELLICH's Residence. CI 2 then exited the front door, returned to the vehicle and went to a predetermined location with undercover officers maintaining surveillance.

18. CI 2 related that he/she walked inside the garage/pole building and did not find DELLICH. CI 2 then returned to the vehicle and DELLICH arrived shortly after. CI 2 then walked with DELLICH inside the residence and DELLICH provided CI 2 with a plastic bag of methamphetamine in exchange for the pre-recorded funds. CI 2 then walked back to the vehicle and left.

19. Again, in March 2021, investigators utilized CI 2 to conduct a controlled purchase of crystal methamphetamine. The CI 2 contacted DELLICH via Facebook messenger under the username "Dan Dellich" Facebook User ID# 100017837748285.

20. CI 2 and DELLICH discussed a time and location to meet via Facebook Messenger. The CI 2 was provided pre-recorded funds and went to the location followed by undercover officers. DELLICH was observed standing outside the garage as CI 2 arrived. CI 2 was observed walking with DELLICH into the garage bay door of the smaller and northern most of 3 tan garage/pole buildings located across from DELLICH's residence. CI 2 then exited through the

garage bay door, returned to the vehicle and drove to a predetermined location with undercover officers maintaining surveillance.

21. CI 2 related that he/she walked into the garage with DELLICH and DELLICH said the crystal methamphetamine was already weighed out on the tool chest. CI 2 picked up the bag of crystal methamphetamine and gave DELLICH the pre-recorded confidential funds. CI 2 then left in the vehicle and drove to the pre-arranged meeting place.

22. In the middle of March 2021, investigators utilized CI 2 to conduct a controlled purchase of crystal methamphetamine. CI 2 contacted DELLICH via Facebook messenger under the username "Dan Dellich" Facebook User ID# 100017837748285.

23. CI 2 and DELLICH discussed a time and location to meet via Facebook Messenger. The CI 2 was provided pre-recorded funds and went to the location followed by undercover officers. DELLICH was observed arriving at the garage in a green tractor trailer truck, across from DELLICH's residence approximately 45 minutes before CI 2 arrived. DELLICH then walked from the tractor trailer to DELLICH's residence.

24. Once CI 2 arrived, he/she was observed walking into the garage bay door of the smaller and northern most of 3 tan garage buildings across from DELLICH's Residence. CI 2 exited through the garage bay door a short time later, returned to the vehicle and drove to a predetermined location with undercover officers maintaining surveillance.

25. CI 2 related that he/she walked into the garage where DELLICH was and gave DELLICH the pre-recorded confidential funds. DELLICH then walked to a green tractor trailer truck which was parked just outside the garage and weighed out the meth inside the cab of the truck. DELLICH then handed CI 2 a foil bag with crystal methamphetamine. CI 2 then left in the vehicle and drove to the pre-arranged meeting place.

7

**FACEBOOK HISTORICAL DATA**

26. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

27. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

28. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

29. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these

privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

30. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

31. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

32. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat

feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

33. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

34. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

35. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

36. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

37. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

38. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

39. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

40. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

41. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged

photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

42. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

# INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

43. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

44. Based on the foregoing, your Affiant respectfully requests the court to issue a search warrant for the records retained by Facebook for information further described in Attachments A & B.

45. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

46. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

The above information is true and correct to the best of my knowledge, information and belief.

Respectfully submitted,

*s/Ryan Melder*
RYAN MELDER
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me, by telephone
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 28th day of April, 2021.

HONORABLE CYNTHIA REED EDDY
Chief United States Magistrate Judge



## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the Facebook user ID 100017837748285 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

## Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including the user(s)' full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from December 1, 2020 to the present;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from December 1, 2020 to the present including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from December 1, 2020 to the present, including all Messenger

activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from January 1, 2020 to the present;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within fourteen (14) days of issuance of this warrant.

## II.    Information to be seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of federal felony offenses enumerated in Title 18, United States Code, Section 2516; including, violations of Title 21, United States Code, Sections 841(a)(1)

(possession with intent to distribute a controlled substance), 843(b) (unlawful use of a communication facility), and 846 (conspiracy) involving DELLICH, including, for each user ID identified on Attachment A, information pertaining to the following matters:

    (a)    The facilitation of illegal drug sales in furtherance of a criminal enterprise and/or conspiracy;

    (b)    Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

    (c)    Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

    (d)    The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.